UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
                                     :

ANTHONY ZAPPIN,                          :

                   Plaintiff,      :

                                       :

           v.                          :

                                     :

KEVIN M. DOYLE, ERNEST COLLAZO,    :
JUSTICE DEBORAH KAPLAN, JUSTICE    :
ROLANDO ACOSTA, JUSTICE PETER      :
MOULTON, JUSTICE LAWRENCE MARKS, :
THE JUSTICES OF THE SUPREME COURT  :
OF THE STATE OF NEW YORK APPELLATE :
DIVISION FIRST DEPARTMENT, ROBERT  :
TEMBECKJIAN, JUSTICE MATTHEW F.   :
COOPER, LAUREN LIEBHAUSER, CYRUS  :
VANCE,                              :

                                   :

                   Defendants.   :

                                   :
---------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 10, 2018

17 Civ. 8837 (KPF)

ORDER

KATHERINE POLK FAILLA, District Judge:

      Plaintiff Anthony Zappin initiated this action on November 14, 2017, and

amended his complaint under Federal Rule of Civil Procedure 15(a)(1) shortly

thereafter on November 20, 2017.  (Dkt. #1, 28).  Broadly speaking, Plaintiff's

375-page Amended Complaint alleges constitutional violations and common-

law tort claims that stem from matrimonial proceedings in the New York State

Supreme Court and related criminal and disciplinary matters.  (Dkt. #28 ("Am.

Compl.")).  On April 4, 2018, after warning Plaintiff of the consequences of

continued violation of its orders, the Court issued a brief endorsement stating

that it would not accept Plaintiff's proposed second amended complaint.

(Dkt. #89).  The Court now issues this Order to articulate its reasoning for that decision.

## BACKGROUND

### A.    Factual Background

Because of the length of the Amended Complaint, the Court only briefly summarizes Plaintiff's claims.  Plaintiff states that he "brings this action in an effort to once and for all cease what has become a four-year campaign of harassment, retaliation and outright discrimination against him by Defendants."  (Am. Comp. ¶ 1).  In brief, in February 2014, Plaintiff filed for divorce from his then-wife and for custody of their child in the Supreme Court, New York County.  (*Id.* at ¶ 35).  Though Plaintiff was at times represented or assisted by counsel, he is an attorney and largely represented himself.  (*See id.* at ¶¶ 35, 50, 84, 419; *cf. id.* at ¶ 119).  Plaintiff's matrimonial case was initially before Justice Deborah Kaplan, but was later transferred to Justice Matthew Cooper.  (*Id.* at ¶¶ 41, 101).

Plaintiff's conduct in the matrimonial proceedings led Justice Cooper to sanction Plaintiff in the amount of $10,000.  *Zappin* v. *Comfort*, 26 N.Y.S.3d 217 (Table), 2015 WL 5511519, at *14 (Sup. Ct. Sept. 18, 2015) ("Sanctions Decision"), *aff'd*, 49 N.Y.S.3d 6 (1st Dep't 2017).  In a detailed decision, Justice Cooper found that Plaintiff had "used his *pro se* status to inflict harm on his wife, their child and the court, and in so doing has caused significant harm to himself" and, further, that he had "use[d] his law license as a tool to threaten,

bully, and intimidate." *Id.* at *1.  In the instant proceedings, Plaintiff alleges

that the Sanctions Decision rests on fabrications and misleading omissions

and, in this regard, is a baseless "publicity stunt" meant to "retaliate against

Plaintiff[.]"  (Am. Compl. ¶¶ 2, 120).  Plaintiff alleges that Justice Cooper

improperly disseminated the Sanctions Decision to media outlets, which in

turn published sensationalized articles about it that caused him further harm.

(*Id.* at ¶¶ 130-34).[1]  Ultimately, in January 2017, the First Department

affirmed the Sanctions Decision in a ruling that was, by Plaintiff's telling, "an

utter factual and legal travesty that deliberately denied Plaintiff a meaningful

opportunity to be heard."  (*Id.* at ¶ 147).

As with Plaintiff's prior proceedings before the Court, the Amended

Complaint is in substantial measure an attempt to relitigate — and from

Plaintiff's perspective, to rectify — the proceedings before Justice Cooper.  (Am.

Compl. ¶¶ 169-272).  Where this suit differs from Plaintiff's prior litigations is

in its inclusion of challenges to the First Department Attorney Grievance

---

[1]      These allegations were at the heart of Plaintiff's complaint in *Zappin* v. *Cooper*, No. 16
Civ. 5985 (KPF).  There, Plaintiff sued Justice Cooper for, *inter alia*, defamation and
denial of the right to a fair trial.  (16 Civ. 5985 Dkt. #1).  As evidenced by the Court's
February 2, 2018 Opinion and Order, the Court was troubled by Plaintiff's allegations
and rejected Justice Cooper's judicial immunity defense, though the Court ultimately
dismissed the case on alternate grounds.  *Zappin* v. *Cooper*, No. 16 Civ. 5985 (KPF),
2018 WL 708369 (S.D.N.Y. Feb. 2, 2018).  Plaintiff has filed a motion under Federal
Rule of Civil Procedure 59(e) or, in the alternative, for reconsideration, and that motion
remains pending before the Court.

These allegations are also connected to the *Zappin* v. *Daily News*, No. 16 Civ. 8762
(KPF), and *Zappin* v. *NYP Holdings, Inc.*, No. 16 Civ. 8838 (KPF), matters wherein
Plaintiff sued two newspapers for defamation.  *Zappin* v. *Daily News*, No. 16 Civ. 8762
(KPF), 2017 WL 3425765 (S.D.N.Y. Aug. 7, 2017); *Zappin* v. *NYP Holdings, Inc.*, No. 16
Civ. 8838 (KPF), 2018 WL 1474414 (S.D.N.Y. Mar. 26, 2018).  The Court dismissed both
cases.

Committee's (the "Grievance Committee") "collateral estoppel petition ... seeking to hold Plaintiff guilty of attorney misconduct[.]" (*Id.* at ¶ 307). Plaintiff alleges that this proceeding was brought "in bad faith" and in reliance on "findings [that] had been largely fabricated out of thin air by Justice Cooper." (*Id.* at ¶ 308). Plaintiff alleges that members of the Grievance Committed colluded with Justice Cooper and took the "extraordinary" step of initiating proceedings based on collateral estoppel rather than through a full adversarial proceeding. (*Id.* at ¶¶ 310-15). Again, Plaintiff contends that he was denied a full and fair opportunity to litigate his matrimonial proceedings before Justice Cooper. (*Id.* at ¶ 313). Finally, Plaintiff alleges that his March 28, 2017 arrest was "unlawful and retaliatory." (*Id.* at ¶ 469). On these facts, Plaintiff brings claims under 42 U.S.C. § 1983 for violations of his right to procedural due process, impermissible gender discrimination, and retaliation for the exercise of his constitutional rights, as well as various state-law torts. (*Id.* at ¶¶ 508-607).

## B.     Procedural Background

The Court has outlined the procedural history of this case in several prior orders and endorsements, but does so again to make plain how Plaintiff's own actions have left the Court no choice but to dismiss this case with prejudice.

On November 20, 2017, Plaintiff filed a motion for a preliminary injunction "seeking to enjoin the collateral estoppel attorney disciplinary matter brought" against him by "the Attorney Grievance Committee for the Appellate

Division First Judicial Department." (Dkt. #30 at 1; *see also* Dkt. #31 (Plaintiff's Declaration); Dkt. #35 (Plaintiff's Supplemental Declaration)). Plaintiff's papers indicated that a referee appointed in the disciplinary proceeding had recommended that Plaintiff be disbarred, and that the Grievance Committee had moved to confirm the recommendation. (Dkt. #30 at 8). At the time, none of the Defendants had been served with the Amended Complaint. On November 28, 2017, the New York State Attorney General's Office (the "Attorney General's Office") filed a letter stating that it did not yet represent the State Defendants[2] because they had not been served, but requesting leave, within 30 days of service, simultaneously to oppose Plaintiff's motion for a preliminary injunction and to move for dismissal of the case. (Dkt. #32). In an endorsement dated December 1, 2017, the Court asked that the Attorney General's Office notify the Court when service had been effected and propose a briefing schedule at that time. (Dkt. #33).

On December 13, 2017, Plaintiff sought leave of Court to appear by telephone to file an application for a temporary restraining order to enjoin the proceedings before the Grievance Committee; Plaintiff explained that he needed to remain at home with his ailing mother and would be unable to travel to New York. (Dkt. #37). Plaintiff filed a supporting affidavit and proposed temporary restraining order with his letter. (*Id.*). The State Defendants opposed the

---

[2]     The Court has previously defined the State Defendants to include Kevin Doyle; Ernest Collazo; Robert Tembeckjian; Justices Kaplan, Cooper, Acosta, Moulton, and Marks; and the Justices of the Appellate Division, First Department.

application, and the Court denied Plaintiff's request based on its concerns about the doctrinal underpinnings of Plaintiff's application for injunctive relief, which concerns caused it to adhere to the Local Rules of this District and its own Individual Rules of Practice requiring in-person appearance. (Dkt. #38, 49). The Court later denied Plaintiff's application for reconsideration of its ruling. (Dkt. #54).

The Attorney General's Office filed a notice of appearance on behalf of the State Defendants on December 18, 2017, and simultaneously proposed dates in February and March of 2018 for briefing on Plaintiff's preliminary injunction motion and the State Defendants' correlative motion to dismiss. (Dkt. #53). Not wanting to delay unnecessarily its resolution of Plaintiff's application for emergent relief, the Court rejected the State Defendants' proposal and directed them to "propose a schedule solely on Plaintiff's motion for a preliminary injunction and which takes into account the comparative urgency of Plaintiff's request." (Dkt. #55). The State Defendants filed their opposition to Plaintiff's motion for a preliminary injunction on January 12, 2018. (Dkt. #61). Though Plaintiff missed the January 26, 2018 deadline to file his reply brief, the Court granted his application to file untimely, and Plaintiff did so on February 2, 2018. (Dkt. #67, 69).

In the meantime, on December 22, 2017, the New York County District Attorney's Office filed a notice of appearance on behalf of Defendant Vance, and requested leave to file a motion to dismiss Plaintiff's Amended Complaint. (Dkt.

6

#58-59).  The Court granted the request and set a briefing schedule.  (Dkt. #60).  Defendant Vance filed his motion on January 30, 2018.  (Dkt. #62). Plaintiff was directed to file his opposition brief by March 2, 2018.  (Dkt. #60).

Plaintiff filed a letter with the Court on February 13, 2018, stating that he "plan[ned] to file a motion seeking leave to file a Second Amended Complaint no later than Monday, February 19, 2018," and that the amended pleading would "substantially modify the claims in the Amended Complaint … as well as the factual allegations against the [D]efendants[.]"  (Dkt. #71).  In his letter, Plaintiff stated that he had "been preparing the proposed Second Amended Complaint and accompanying motion papers[.]"  (Id.).  Plaintiff added that his amendments would moot Defendant Vance's motion to dismiss, and asked that the briefing schedule be held in abeyance.  (Id.).  The Court granted Plaintiff's application and stayed briefing on Defendant Vance's motion to dismiss.  (Dkt. #72).  Because Plaintiff stated that he would file his motion to amend "no later than Monday, February 19, 2018" (Dkt. #71), the Court set February 19, 2018, as the deadline for Plaintiff's motion (Dkt. #72).

On February 27, 2018, having heard nothing from Plaintiff for the preceding two weeks, the Court reinstated the briefing schedule and extended the deadlines on Defendant Vance's motion to dismiss.  (Dkt. #73).  Later that day, Plaintiff filed a letter in which he lashed out at the Court for setting a deadline "based on [his] unsolicited representation that [he] anticipated filing [a motion to amend] by that date."  (Dkt. #74).  In any event, Plaintiff "want[ed] to

7

make the Court aware that I will be filing a motion for leave to file a second amended complaint tomorrow, February 28, 2018, pursuant to Fed. R. Civ. P. 15(a)(2)." (*Id.*).

In reliance on this representation, the Court once more held the briefing schedule on Defendant Vance's motion in abeyance and directed Plaintiff to file his motion for leave to amend on February 28, 2018, and for all Defendants to respond by March 14, 2018. (Dkt. #75). The relevant portion of the Court's endorsement is included for clarity:

> It is further ORDERED that the briefing schedule on Defendant Vance's motion to dismiss, which the Court reinstated earlier today, be held in abeyance. The Court stayed the briefing schedule on the basis of Plaintiff's representation to the Court that he would "seek[] leave to file a Second Amended Complaint no later than Monday[,] February 19, 2018." (Dkt. #71). When Plaintiff failed to adhere to his self-imposed deadline, the Court reinstated the briefing schedule. Now Plaintiff has renewed his pledge to amend his pleadings; the Court accepts his representation and stays the briefing schedule once more.
>
> The Court accepts Plaintiff's representation that he will file a motion for leave to amend his pleadings tomorrow (February 28, 2018) and, indeed, the Court directs Plaintiff to file his motion on February 28, 2018 *and will not accept it if it is filed untimely*. Defendants are directed to file letter responses to Plaintiff's motion to amend by March 14, 2018. The Court sees no need for a reply brief.

(*Id.* (emphasis added)).

The Court received neither Plaintiff's motion for leave to amend nor a request for an extension of the time to file on February 28, 2018. Instead, on March 1, 2018, Plaintiff filed a letter stating that he had encountered

technological difficulties in placing the necessary redactions on his proposed second amended complaint.  (Dkt. #76).  He therefore requested "a one day extension."  (*Id.*).  The Court understood from Plaintiff's submission that he was in a position to file his motion (including his proposed amended pleading) promptly once his technological problems had been resolved.  It formally granted Plaintiff's request for an extension on March 6, 2018, and directed Plaintiff to file by March 8, 2018.  (Dkt. #77; *see also id.* ("Given Plaintiff's previous promises to the Court and the time that has passed since Plaintiff's letter, above, the Court expects Plaintiff will meet this deadline.")).

On March 8, 2018, Plaintiff was disbarred in a per curiam decision of the First Department.  *Matter of Zappin*, — N.Y.S.3d —, 2018 WL 1188869 (1st Dep't Mar. 8, 2018).  The Court understood that this action might change the complexion of Plaintiff's pleadings and, indeed, that same day Plaintiff requested an extension of time to file his motion for leave to amend until March 12, 2018.  (Dkt. #78).  The State Defendants asked the Court to deny Plaintiff's request and to deny his motion for a preliminary injunction as moot.  (Dkt. #79).  Plaintiff responded in a letter reiterating his request for an extension until March 12, 2018, and laying out, in detail and for the first time, the amendments he planned to make to his pleadings.  (Dkt. #80).  The next day, the Court denied Plaintiff's motion for a preliminary injunction as moot; it denied Defendant Vance's motion to dismiss without prejudice; and it *sua*

*sponte* granted Plaintiff's as-yet-unfiled motion for leave to amend, directing Plaintiff to file his second amended complaint by March 12, 2018.  (Dkt. #81).

Instead of filing his second amended complaint or a request for an extension on March 12, 2018, Plaintiff submitted a letter on March 13, 2018, asking for an extension *nunc pro tunc* until March 16, 2018.  (Dkt. #82).  To support his untimely request, Plaintiff emphasized to the Court how close to completion he was with his amended pleading:  "Although I have a completed Second Amended Complaint, after consulting with my counsel in other jurisdictions over the past few days it has become clear that the complaint needs to be winnowed and have a narrower focus given Defendants' bad faith conduct last week."  (*Id.*).  The Court endorsed Plaintiff's letter with a lengthy explanation of the four prior Court orders Plaintiff had disobeyed and warned Plaintiff, in bolded text and in no uncertain terms: "Plaintiff is hereby ORDERED to file his Second Amended Complaint by 11:59 p.m. on March 30, 2018.  If Plaintiff does not do so, this case will be dismissed for failure to prosecute and violation of multiple Court orders."  (Dkt. #84).

The Court believed that by granting an extension of time well in excess of that requested, it would afford Plaintiff sufficient time to put final touches on a nearly-completed document, weigh the strategic concerns he had, and file his amended pleading.  Such was not the case.  On April 2, 2018, one business day after the deadline, Plaintiff filed a letter explaining that he had been hospitalized with kidney stones on March 29, 2018, and had undergone

10

surgery on March 31, 2018.  (Dkt. #85).  But having resolved these medical issues by the time of his letter, Plaintiff assured the Court that he "anticipate[d] being able to file the Second Amended Complaint by the end of the day tomorrow, Tuesday[,] April 3, 2018."  (*Id.*).  Separately, Plaintiff took issue with the Court's ability to dismiss his case and argued that it would be "incredibly prejudicial to [him]" if he were not permitted to amend his pleadings once more.  (*Id.*).  Plaintiff offered to provide medical records to corroborate the basis for his request, and Defendant Vance requested that Plaintiff be ordered to submit them for review.  (*Id.*; Dkt. #86).  That same day, the Court granted Plaintiff's request for an extension to April 3, 2018, and directed him to submit his medical records to the Court by email for *in camera* review at the time he filed his second amended complaint.  (Dkt. #87).  The Court was clear that Plaintiff "may have until the end of the day on April 3, 2018, to file his [second amended complaint], and no longer."  (*Id.*).

Plaintiff filed nothing on April 3, 2018.  Instead, on April 4, 2018, Plaintiff filed certain of his medical records along with a letter stating that he was "finishing preparing the exhibits and making appropriate redactions now" and that he expected he could file his amended pleading by 5:00 p.m. that day. (Dkt. #88).  Ignoring his numerous prior delays, Plaintiff stated that he could "imagine no way [in which] Defendants would be prejudiced by [his] filing the Second Amended Complaint this afternoon rather than last night."  (*Id.*).  The Court filed a brief endorsement stating it would not accept Plaintiff's second

11

amended complaint. (Dkt. #89). Thereafter, Plaintiff filed a notice of voluntary dismissal of his claims against Defendants Vance, Liebhauser, and Cooper under Rule 41(a)(1)(A)(i); he also filed a lengthy letter regarding his conduct in this litigation and the Court's authority to dismiss his case, and proffering another request — which stood in contrast to the representations he had made to the Court just a few hours earlier — for an additional 30 days to file his amended complaint. (Dkt. #91). The Court denied Plaintiff's request for an extension. (Dkt. #92).

## DISCUSSION

### A.      Dismissals Under Federal Rule of Civil Procedure 41(b)

The Court "has the inherent power to supervise and control its own proceedings and to sanction counsel or a litigant for bad-faith conduct or for disobeying the court's orders[.]" *Mickle* v. *Morin*, 297 F.3d 114, 125 (2d Cir. 2002). Of course, these "powers must be exercised with restraint and discretion." *Chambers* v. *NASCO Inc.*, 501 U.S. 32, 43 (1991). Federal Rule of Civil Procedure 41(b) provides: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). The Second Circuit has held that it is "unquestioned that Rule 41(b) also gives the district court authority to dismiss a plaintiff's case *sua sponte* for failure to prosecute," and, by extension, for persistent failure to obey its orders. *LeSane* v. *Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001). Though Plaintiff's dilatory conduct initially

12

bespoke a failure to prosecute his claims, the Court imposes this sanction for Plaintiff's persistent disregard of its orders.

Where a district court dismisses a case for failure to comply with court orders, a court must consider "[i] the duration of the plaintiff's failure to comply with the court order; [ii] whether the plaintiff was on notice that failure to comply would result in dismissal; [iii] whether the defendants are likely to be prejudiced by further delay in the proceedings; [iv] a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard; and [v] whether the judge has adequately considered a sanction less drastic than dismissal." *Lamont* v. *Edwards*, 690 F. App'x 61, 62 (2d Cir. 2017) (summary order) (quoting *Spencer* v. *Doe*, 139 F.3d 107, 112-13 (2d Cir. 1998)); *see also Lucas* v. *Miles*, 84 F.3d 532, 535 (2d Cir. 1996). "No single factor is dispositive." *Lamont*, 690 F. App'x at 62. A case should only be dismissed upon a finding of "willfulness, bad faith, or reasonably serious fault." *Mitchell* v. *Lyons Prof'l Servs., Inc.*, 708 F.3d 463, 467 (2d Cir. 2013) (quoting *Commercial Cleaning Servs., LLC* v. *Colin Serv. Sys., Inc.*, 271 F.3d 374, 386-87 (2d Cir. 2001)).[3]

To be sure, "a Rule 41(b) dismissal remains 'a harsh remedy to be utilized only in extreme situations.'" *LeSane*, 239 F.3d at 209 (quoting *Theilmann* v. *Rutland Hosp., Inc.*, 455 F.2d 853, 855 (2d Cir. 1972)). In this

---

[3]     At least one court in this District has noted that the Second Circuit's bad faith requirement "is in considerable tension with the Supreme Court's inherent-sanctioning-power jurisprudence." *Azkour* v. *Maucort & Little Rest Twelve, Inc.*, No. 11 Civ. 5780 (RJS), 2018 WL 502674, at *8 n.8 (S.D.N.Y. Jan. 18, 2018) (citing *Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 59 (1991) (Scalia, J., dissenting)).

regard, dismissal of an action "must be proceeded by particular procedural prerequisites" — namely, "notice of the sanctionable conduct, the standard by which it will be assessed, and an opportunity to be heard must be given." *Mitchell*, 708 F.3d at 467 (citing *Mickle*, 297 F.3d at 126).  A dismissal with prejudice must also be "supported by 'clear evidence' of misconduct and 'a high degree of specificity in the factual findings.'"  *Id.* (quoting *Mickle*, 297 F.3d at 125-26).

In the normal course, district courts should be particularly deferential to *pro se* litigants regarding procedural matters insofar as they "generally lack[] both legal training and experience and [are] likely to forfeit important rights through inadvertence if … not afforded some degree of protection."  *Tracy* v. *Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).  But a court need not be deferential where the plaintiff is a lawyer representing himself.  *Id.*  And, in any case, "all litigants, including *pro ses*, have an obligation to comply with court orders" and "[w]hen they flout that obligation they, like all litigants, must suffer the consequences of their actions."  *Koehl* v. *Greene*, 424 F. App'x 61, 62 (2d Cir. 2011) (summary order) (quoting *McDonald* v. *Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988)).

## B. Because of Plaintiff's Repeated Violations of Court Orders, This Case Is Dismissed with Prejudice

While Plaintiff brings this action *pro se*, he is an experienced litigator and litigant.  Plaintiff is a graduate of Columbia Law School and has worked as a patent litigator at several prominent law firms.  (*See* Am. Compl. ¶¶ 246, 296-

14

98).  What is more, this is the sixth case Plaintiff has brought representing himself in this District.  *See Zappin* v. *Cooper*, No. 16 Civ. 5985 (KPF); *Zappin* v. *Aronson Mayefsky & Sloan LLP*, No. 16 Civ. 7417 (LGS); *Zappin* v. *Daily News LP*, No. 16 Civ. 8762 (KPF); *Zappin* v. *NYP Holdings, Inc.*, No. 16 Civ. 8838 (KPF); *Zappin* v. *Comfort*, No. 18 Civ. 1693 (RWS).[4]  Plaintiff has access to the Court's Electronic Case Filing system and has proved capable of filing complex legal briefs and supporting papers in his prior cases in this District.  Thus, while *pro se* litigants are normally afforded a special solicitude and deserve more lenient treatment by the court, *e.g.*, *Estelle* v. *Gamble*, 429 U.S. 97, 106 (1976), "a lawyer representing himself ordinarily receives no such solicitude at all."  *Tracy*, 623 F.3d at 102 (citing *Holtz* v. *Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001)).

Put simply, Plaintiff has persistently ignored Court-imposed deadlines, and particularly in light of Plaintiff's most recent filing, the Court has no reason to believe that Plaintiff will ever view this Court's orders and deadlines as binding on him.  In assessing an appropriate remedy for Plaintiff's conduct, the Court is guided by the five factors a district court must consider, and addresses each in turn.

---

[4]     Plaintiff also appeared in a September 2015 lawsuit brought by his mother against the attorney for the child in Plaintiff's matrimonial proceedings.  *See Zappin* v. *Cohen*, No. 15 Civ. 7271 (PKC).

### 1.    Plaintiff Has Flouted Multiple Court Orders

Plaintiff has ignored no less than six of the Court's orders.  To review, the Court first learned of Plaintiff's wishes to amend his complaint for a second time nearly two months ago, and in the time since has afforded him repeatedly opportunities to amend.  The Court has issued the following orders regarding Plaintiff's application to amend his pleadings:

i.      On February 13, 2018, Plaintiff was directed to file his motion for leave to amend by February 19, 2018.  (Dkt. #72).  The Court set that date based on Plaintiff's representation that he would file "no later" than that day — a representation on which the Court was entitled to rely in setting a schedule.  (Dkt. #71).  Plaintiff ignored that deadline.

ii.     On February 27, 2018, Plaintiff belatedly offered to file his motion by February 28, 2018.  (Dkt. #74).  He was ordered to do so timely.  (Dkt. #75).  Plaintiff ignored that deadline.

iii.    On March 1, 2018, Plaintiff made another untimely request to file his motion belatedly.  (Dkt. #76).  An extension was granted to March 8, 2018.  (Dkt. #77).  Plaintiff again did not file, although the Court understands that this delay may have been attributable to the First Department's disbarment order.

iv.     On March 8, 2018, Plaintiff requested an extension of time to March 12, 2018, which request was granted.  (Dkt. #78, 81).  Plaintiff ignored that deadline.

v.      On March 13, 2018, Plaintiff made an untimely request for an extension until March 16, 2018.  (Dkt. #82).  In light of Plaintiff's evident inability to abide by deadlines, even those of his own selection, the Court gave Plaintiff more time than he had requested in the hope that 17 additional days — in point of fact, over an additional month from Plaintiff's first suggested deadline — would suffice.  (Dkt. #84).  The Court directed Plaintiff to file

16

his second amended complaint by March 30, 2018, and, of critical importance here, informed him that failure to do so timely would result in dismissal of his case for failure to prosecute and violation of multiple court orders. (*Id.*). Plaintiff disregarded the Court's directive, and did not file anything on March 30, 2018.

vi.   On April 2, 2018, Plaintiff filed a letter stating that he had been hospitalized over the weekend and had not been able to file the second amended complaint. (Dkt. #85). Because Plaintiff stated he would file his amended pleading the next day, the Court granted an extension to April 3, 2018, but again warned that it would not accept a document submitted later than that date. (Dkt. #87).

The medical issues that Plaintiff has begun to cite recently neither explain nor justify the full extent of his misconduct.[5]  Indeed, Plaintiff represented to the Court over two weeks prior, on March 13, 2018, that he had "a completed Second Amended Complaint" but was weighing strategic considerations "after consulting with [his] counsel[.]" (Dkt. #82).  Plaintiff stated that he planned to make several edits to his pleadings in light of those conversations, and he proffered to the Court in detail what those edits would be.  (Dkt. #80).  Thus, the Court understood from Plaintiff's own representations to it that his amended pleading was complete, or nearly complete, and could be filed presently.

Focusing on Plaintiff's most recent failure to abide by this Court's orders, the Court took Plaintiff at his word on April 2, 2018, and stated that "he may

---

[5]     Plaintiff's latest letter states that he was hospitalized multiple times in the month of March (Dkt. #91), but Plaintiff did not tell this to the Court in the several letters he submitted in March and, in any event, this is not the basis for the Court's dismissal of his case.  Plaintiff had engaged in sanctionable conduct well before advising the Court of any medical issues.

have until the end of the day on April 3, 2018, to file his [second amended complaint], and no longer." (Dkt. #87). Undeterred, Plaintiff disregarded the Court's very clear directive and filed a letter on April 4, 2018, enclosing medical records and promising the Court that he was putting the finishing touches on his second amended complaint and would file later that day. (Dkt. #88). Given Plaintiff's history of willful disregard for its orders, the Court had no reason to believe Plaintiff, and stated that it would not accept his untimely filing, particularly not after the Court's very clear directives that it would not accept any submission filed after April 3, 2018. (Dkt. #89).

The Court's concerns proved to be well-founded. Plaintiff filed a second letter on April 4, 2018, asking for an additional 30 days to file the second amended complaint. (Dkt. #91). Plaintiff stated that his latest request "would represent the balance of 30 days (the most typical time period a plaintiff is given to amend a complaint)." (*Id.*; *see also id.* ("In its March 13, 2018 Order, the Court gave me a mere 17 days to amend an over 400-page complaint with thousands of pages of exhibits and with an over 300,000 page record in the state court."). Not so. By the time the Court granted Plaintiff an extension from March 13, 2018, to March 30, 2018, he had already had 30 days to amend his pleadings.

Plaintiff has engaged in this course of conduct over a period of months and with abiding disdain for the Court and its orders. Though Plaintiff now claims that the deadlines he suggested were merely aspirational (*see* Dkt. #74),

18

the Court had no reason to believe as much given the certainty with which Plaintiff spoke at the time.  In any event, Plaintiff cannot arrogate to himself the ability to set the Court's docket.  The Court cannot manage Plaintiff's case in the face of his unwillingness to act within times set by the Court that either match or exceed the deadlines he has requested.  This first factor thus weighs in favor of dismissal.

### 2. Plaintiff Was on Notice That His Conduct Would Result in Dismissal

Plaintiff was repeatedly placed on notice that the Court believed his conduct to be sanctionable and, importantly, was explicitly told in bolded text that if he failed to file timely on March 30, 2018, "**this case will be dismissed for failure to prosecute and violation of multiple Court orders**."  (Dkt. #84; *see also* Dkt. #87; *cf.* Dkt. #75, 77).  *See Mitchell*, 708 F.3d at 468 (holding that scheduling order gave sufficient notice that additional misconduct would result in dismissal).  Knowing the Court's intention to dismiss his case if he missed the next deadline, Plaintiff had ample opportunity to either file his amended pleading timely or to request an extension timely and explain why he needed even more time and his case should not be dismissed.  He failed to do either. (Dkt. #91).  And, in any event, the Second Circuit has held that "[a]n opportunity to be heard before a dismissal takes effect is not required when the notice of impending dismissal is clearly communicated, in the context of a scheduling order or by other means."  *Mitchell*, 708 F.3d at 468.  This factor militates in favor of dismissal.

19

### 3.     Defendants Will Be Prejudiced by Further Delay

Plaintiff has repeatedly asserted that Defendants will suffer no prejudice by allowing him additional extensions beyond the five or so he has already been given.  (*E.g.*, Dkt. #91).  Plaintiff has dismissed his claims without prejudice against Defendants Vance, Liebhauser, and Cooper, as is his right under Rule 41(a), and this leaves the Court unable to redress any prejudice they may have suffered by any further delays.  Plaintiff argues that the remaining State Defendants "cannot plausibly show prejudice," as they have not answered the Amended Complaint and, in Plaintiff's view, have engaged in delay tactics and have made misrepresentations to the Court.  (*Id.*).

The Court disagrees.  "[T]he need to show actual prejudice is proportionally greater" in cases where the "delay is moderate or excusable." *U.S. ex rel. Drake* v. *Norden Sys., Inc.*, 375 F.3d 248, 256 (2d Cir. 2004).  But where, as here, a plaintiff has repeatedly failed to file his amended pleadings, even after being told a continued failure to do so would result in dismissal, prejudice may be presumed.  *See id.* (citing *Lyell Theatre Corp.* v. *Loews Corp.*, 682 F.2d 37, 39 (2d Cir. 1982)).  Of course, any presumption would be rebuttable, and the Court here can rely on facts beyond the presumption. Though Plaintiff's case is in its early stages, the State Defendants were served with Plaintiff's Amended Complaint months ago, and immediately expressed their intention to file a motion to dismiss.  (Dkt. #53).  This is understandable, as Plaintiff has levied very serious allegations of misconduct against, among

others, several sitting state-court judges.  The State Defendants have been

waiting for nearly two months to learn what Plaintiff's second amended

complaint will say, and neither they nor the Court can have any confidence

that Plaintiff will ever file this document.  Without knowing the content of the

second amended complaint, the State Defendants are not on notice of the

claims against which they must defend themselves and, accordingly, cannot

know what evidence to preserve or how to mount their defense.  *U.S. ex rel.*

*Drake*, 375 F.3d at 256 ("Until these claims were repleaded, defendants were

therefore in the dark as to the exact contours of the charges against them and

so they would have had a much harder time preparing their defense.").  On this

record, the Court finds that the State Defendants would be prejudiced by

additional delays — of any length, and certainly of the length Plaintiff

requests — were the Court to grant Plaintiff additional time, and this third

factor thus also weighs in favor of dismissal.[6]

### 4.   Balancing the Court's Interest in Managing Its Docket Against Plaintiff's Right to Be Heard Weighs In Favor of Dismissal

The Court is mindful that it must appropriately balance its interest in

managing its docket (which includes ensuring compliance with its orders) with

---

[6]     In his latest filing, Plaintiff suggests that the State Defendants have intentionally stalled the progress of this case "to buy time in order to prepare and issue a disbarment order" in the state court. (Dkt. #91).  According to the Amended Complaint, Plaintiff was first advised that he was under investigation by the Grievance Committee on October 1, 2015, well before Plaintiff filed this litigation in November 2017.  (Am. Compl. ¶ 274). Plaintiff does not provide the Court with anything beyond his conjecture to substantiate his belief, and the Court does not have any basis in the record before it to find that the State Defendants delayed any progress in this case to allow the First Department time to rule on Plaintiff's disciplinary matter.

Plaintiff's right to be heard on the merits.  *See Dunn* v. *Carrier*, 314 F. App'x 391, 393 (2d Cir. 2009) (summary order) (citing *Lucas*, 84 F.3d at 535-36). Plaintiff's conduct over the past two months gives the Court no reason to believe it will ever be able to hold Plaintiff accountable to a deadline or to any other order it issues.  More to the point, the Court has considered and remains unable to fashion any remedy short of dismissal that sanctions Plaintiff's conduct without unduly prejudicing the Court or the State Defendants.  Thus, the fifth factor greatly informs the Court's balancing under the fourth factor and ultimately tips the scales in favor of dismissal.

### 5.    The Court Is Unable to Fashion an Effective Lesser Sanction

After Plaintiff missed his first, self-imposed, deadline to file a motion to amend, the Court reinstated briefing on Defendant Vance's motion to dismiss, thus forcing Plaintiff to stand on his Amended Complaint.  But Plaintiff immediately, if belatedly, requested additional time, thus spurring the series of events the Court now addresses.  To force Plaintiff to stand on his Amended Complaint at this point simply will not work — Plaintiff has proffered several amendments to his pleadings that will both drop claims and add new ones, and it would be highly prejudicial to force the State Defendants to respond to claims that Plaintiff does not intend to pursue simply in the name of advancing this case.

Because Plaintiff offered a preview of his amendments (*see* Dkt. #80), the Court has considered whether it could treat Plaintiff's March 8, 2018 letter as a

22

formal amendment to his existing Amended Complaint.  It has determined that this is not feasible.  Plaintiff's subsequent communications to the Court indicate that his thinking on amendments to his claims continues to evolve (*see* Dkt. #82 (stating he was speaking with counsel regarding his amendments)), and the Court cannot presume that Plaintiff remains committed to the amendments he proposed on March 8, 2018.  As above, it would be both arbitrary and artificial for the Court to craft a complaint simply for the purpose of advancing this case.  Of greater concern, this remedy could force the State Defendants to answer — and the Court to rule on — claims that Plaintiff may no longer be interested in pursuing.

A monetary sanction will likewise fail to deter Plaintiff's conduct.  Justice Cooper sanctioned Plaintiff in the amount of $10,000 during Plaintiff's matrimonial proceeding and yet he persists in violating court orders.  The Court cannot conceive of an amount that would have an effect on Plaintiff's behavior.  And in light of the disbarment proceedings that are at the heart of this litigation, the Court did not think it proper to consider professional discipline.  *Cf. Mitchell*, 708 F.3d at 469 (suggesting that the district court could impose monetary fines or professional discipline as lesser sanctions).

Finally, dismissal of this case without prejudice will not suffice.  As discussed *supra* on the issue of prejudice, the State Defendants ought not to have Plaintiff's claims looming over them indefinitely.  To permit Plaintiff to re-file his claims at some undetermined future date within the limitations period

would work an undue harm on parties who have not themselves contributed to any delay in Plaintiff's amendment of his pleadings.

Faced with two months of Plaintiff's persistent refusal to obey its orders, the Court does not believe that it can afford Plaintiff his right to be heard on the merits without doing considerable violence to the Court's right to have its orders followed and to the State Defendants' rights to know the claims brought against them and to mount a fully-informed defense.  To control the cases that come before it, the Court is given broad discretion to issue orders and, when those are disobeyed, to impose sanctions.  Having no ability to ensure compliance with the former going forward, the Court now resorts to the latter.  To be clear, it does not do so lightly.  The Court has admonished Plaintiff about the importance of abiding by its orders; it has given Plaintiff several "second chances"; and it has tried without success to construct an alternative to this dismissal.  On the record before it, the Court is confident that giving further opportunities to Plaintiff to abide by its orders will be met only with Plaintiff's continued misconduct.  This case is dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff's claims against the State Defendants are hereby DISMISSED WITH PREJUDICE.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:        April 10, 2018
              New York, New York

_____
  KATHERINE POLK FAILLA
United States District Judge

25